UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DATA PROCESSING SCIENCES CORP., | : | Case No. 1:16-cv-387 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| LUMENATE TECHNOLOGIES, L.P., *et al.*, | : | |
| Defendants. | : | |

**ORDER GRANTING IN PART AND DENYING IN PART LUMENATE'S MOTION TO VACATE OR MODIFY THE ARBITRATION AWARD (Doc. 13)**

This civil action is before the Court on Lumenate's[1] motion to vacate or modify the arbitration award (Doc. 13) and Data Processing Sciences Corporation's ("DPS") memorandum contra (Doc. 14).

### I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

DPS initiated the litigation with Lumenate on August 18, 2014, by filing a complaint in state court seeking immediate and accelerated payment of the full amount owed on the $4.5 million Note issued pursuant to the parties' July 31, 2013 Asset Purchase Agreement ("APA"). (Case No. 1:14-cv-740, Doc. 2). DPS sued Lumenate in court (as opposed to initiating arbitration in accordance with Section 8.6 of the APA), because the Note explicitly and exclusively vested jurisdiction for "all matters arising out of this Note" with the state and federal courts in Hamilton County, Ohio. (*Id.* at ¶ 10).[2]

---

[1] Defendants include Lumenate Technologies, L.P. and Lumenate, LLC (collectively "Lumenate").

Lumenate was required, by Section 8.2 of the APA, to arbitrate any indemnification claim for breach of DPS's representations and warranties under the APA. (*Id.*, Doc. 10-1). Accordingly, when Lumenate asserted a counterclaim for indemnification and set-off under the APA, DPS successfully argued that Lumenate's counterclaim had to proceed in arbitration. (*Id.*, Doc. 22). Because Lumenate's counterclaim had to proceed first (to determine any set-off amount), the Court stayed DPS's claim on the Note while the parties arbitrated Lumenate's counterclaim. (*Id.*)

At the arbitration proceeding, DPS asserted a counterclaim for "indemnification" under Section 8.4 of the APA. DPS sought the exact same damages as those in its stayed court case (*i.e.*, accelerated payment of the full amount due on the Note, plus interest). Specifically, DPS stated in its counterclaim that: "[t]his counterclaim is brought…to recover sums due it from [Lumenate] on the certain [N]ote for the purchase price due DPS under the Asset Purchase Agreement[.]" (Doc. 13, Ex. A at ¶¶ 1, 2, 4). Since DPS's "indemnification" counterclaim was explicitly "on the Note," and DPS had just argued that the state and federal courts of Hamilton County, Ohio had "exclusive" jurisdiction over any claims "on the Note," Lumenate objected to the arbitrability of DPS's counterclaim. (Doc. 13, Ex. B).

The Arbitrator found that the provisions of the Note and the APA "appear to be in conflict," but allowed the counterclaim to proceed in arbitration. (Doc. 6-1 at PageID

---

[2] DPS expressly admitted that it could only bring the claim on the Note in a state or federal court in Hamilton County, Ohio. (*Id.*, Doc. 21 at PageID 1594) ("DPS had no ability to enforce the Note other than by filing its lawsuit.").

2

310).  However, the Arbitrator held that "any award on [DPS's] counterclaim will be merely a provisional finding of fact and/or conclusion of law, <u>subject to final review and disposition</u> by the United States District Court in the Federal Case."  (*Id.*) (underlined emphasis in original)

Ultimately, the Arbitrator determined that DPS breached the APA, but since Lumenate failed to evidence damages, Lumenate was not entitled to set-off.  (Doc. 1-1 at 6-8).  Furthermore, the Arbitrator granted DPS's counterclaim on the Note and awarded DPS $4,141,927.00, plus interest.  (*Id.* at 10-11).

Lumenate seeks to vacate and/or modify the arbitration award because: (1) the Arbitrator lacked jurisdiction over DPS's counterclaim; (2) the Arbitrator dispensed his own "brand of industrial justice"; and (3) the arbitration award results in a "manifest disregard of the law."  In the alternative, Lumenate moves the Court to modify the arbitration award to promote justice between the parties.

DPS requests that the Court grant DPS's Application for Confirmation of the Arbitration Award.  (Doc. 1).

## II.   STANDARD OF REVIEW

"A federal court may set aside an arbitration award only where certain statutory or judicially created grounds are present."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Jaros*, 70 F.3d 418, 420 (6th Cir. 1995).  A district court "may make an order vacating the award … where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  Additionally, a district court "may make an order modifying or correcting the award … [w]here the arbitrators have awarded upon a matter not submitted to them." 9 U.S.C.§11.

As such, "a court is empowered to determine whether an arbitrator's award exceeded the limits of his contractual authority." *Koehring Co., Master Div. v. Local 699, Int'l Union of Mach. Workers, AFL-CIO*, No. 4553, No. 4553, 1974 U.S. Dist. LEXIS 7709, at *6 (S.D. Ohio July 9, 1974). Where "the arbitrator act[ed] outside the scope of his contractually delegated authority"—the district court should vacate any award relating to that issue. *Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013).

### III. ANALYSIS

#### A. Whether the Arbitrator Exceeded His Authority

Lumenate argues that the Arbitrator exceeded his authority when he awarded DPS the sum of $4,141,927 for its "indemnification" counterclaim, because DPS's counterclaim was not arbitrable. (Doc. 1-1 at PageID 16). "An arbitrator … exceeds [his] authority only when the [contractual] agreement does not commit the dispute to arbitration." *Truck Drivers Local No. 164 v. Allied Waste Sys., Inc.*, 512 F.3d 211, 217 (6th Cir. 2008).

Here, the Arbitrator determined that the jurisdictional and dispute resolution provisions of the Note and the APA were in conflict. (Doc. 6-1 at PageID 311). Specifically, the Arbitrator found that "the Note and APA each have different forums with exclusive jurisdiction for disputes. Neither the Note nor the APA address this circumstance, and the Note's jurisdictional provision does not clearly supersede the APA's jurisdictional provision." (*Id.*) Accordingly, the Arbitrator allowed the counterclaim for indemnification to proceed, but stated that "any award on such counterclaim will be merely a provisional finding of fact and/or conclusion of law,

4

<u>subject to final review and disposition</u> by the United States District Court in the Federal Case." (*Id.*) (underlined emphasis in original).

This Court previously ruled that claims arising out of the Note needed to be resolved exclusively in court, because the Note provides that all claims "arising out of" the Note are subject to the exclusive jurisdiction of the state and federal courts in Hamilton County, Ohio. (Case No. 1:14cv740, Doc. 22 at 5). Whether DPS framed its counterclaim as one for indemnification for alleged losses under the Note or as a claim under its alleged rights on the Note directly, DPS's counterclaim still "arises out of" the Note. *See, e.g., Fuller v. Cuyahoga Metro. Housing Auth.*, 335 F. App'x 732, 736 (6th Cir. 2009) (defining "arises out of" as meaning that "the claim is causally connected").[3] In fact, DPS's right to accelerate the total amount due on the Note, plus interest, (*i.e.*, the exact relief the Arbitrator granted to DPS in his Order), arises exclusively under the terms of the Note. (Case No. 1:14cv740, Doc. 10-1 at PageID 730). This Court already determined that DPS cannot resolve any claim "on the Note" through arbitration:

> [DPS's] complaint asserts a claim on the Note, which is not subject to arbitration. Therefore, [DPS] cannot have waived its right to demand arbitration on [Lumenate's] counterclaim, where [DPS's] claim could not have been resolved through arbitration. The Note presents a separate and independent legal obligation created under the APA, so [DPS] had no ability to enforce the Note other than by filing its lawsuit. The Note does not have an arbitration clause, nor does it directly or impliedly incorporate the APA's arbitration clause.

(*Id.*, Doc. 22 at PageID 1613-14).

---

[3] Courts generally construe the phrase "arising out of" expansively, which would include DPS's counterclaim. *See, e.g., Gerber v. Riordan*, 535 F. Supp. 2d 860, 861 (N.D. Ohio 2008) ("[C]ase law gives the phrase, 'arising out of' very broad—indeed, extraordinarily broad—meaning.").

DPS's contention that its counterclaim is really just a claim for indemnification under the APA is belied by the language of the counterclaim itself. (Doc. 13, Ex. A at ¶¶ 1, 2, 4 ("This counterclaim is brought…to recover sums due it from [Lumenate] on the certain [N]ote for the purchase price due DPS under the Asset Purchase Agreement[.]")). Accordingly, DPS's indemnification counterclaim "arises out of" the Note and was not subject to arbitration. Thus, the Arbitrator lacked authority to decide DPS's counterclaim. Accordingly, the Court vacates the award relating to DPS's counterclaim, because the Arbitrator's award exceeded the limits of his contractual authority. 9 U.S.C. § 10(a)(4).

The Court will resolve DPS's request for amounts due on the Note in *Data Processing Sciences Corp. v. Lumenate Technologies, L.P.*, *et al.*, Case No. 1:14cv740.

**B.     Brand of Industrial Justice and Manifest Disregard of the Law**

Next, Lumenate argues that the arbitration award should be vacated because the Arbitrator implemented his own brand of industrial justice and disregarded the APA and applicable rules of law. *See Mich. Family Res., Inc. v. Serv. Emps. Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007) ("[A]n arbitration decision could be so ignorant of the contract's plain language as to make implausible any contention that the arbitrator was construing the contract.").

The Sixth Circuit has developed a four-part test to evaluate whether an arbitration award fails to "draw its essence" from the contract. A court should vacate an arbitration award when: "(1) it conflicts with express terms of the agreement; (2) it imposes additional requirements not expressly provided for in the agreement; (3) it is not

rationally supported by or derived from the agreement; or (4) it is based on general considerations of fairness and equity instead of the exact terms of the agreement." *Int'l Union of Elec., Elec., Tech., Salaried, Mach. & Furniture Workers, AFL-CIO v. Hurd Corp.*, No. 00-5016, 00-5119, 7 F. App'x 329, 334 (6th Cir. 2001).

Lumenate argues that it properly withheld payments under the Note after DPS breached its representations and warranties contained in the APA. In fact, the Arbitrator determined that "there were breaches in the contract by [DPS]," including the failure to make several required disclosures. (Doc. 1-1 at PageID 12-14, 17). However, the Arbitrator declined to award Lumenate any damages or other remedy based on his opinion that either: (1) Lumenate's damages were "insufficient" (*Id.* at PageID 17) or; (2) DPS did not "cause" the damages (*Id.* at PageID 13-14). Lumenate argues in response that the arbitration award conflicts with the terms of the APA and imposes additional standards not found in the APA.

The parties agreed that any disputes under the APA would be decided by an arbitrator and not by a court. *See, e.g., Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) ("if an 'arbitrator is even arguably construing or applying the contract and acting within the scope of his authority,' the fact that a court is convinced he committed serious error does not suffice to overturn his decision.").[4]

---

[4] *See also Lattimer-Stevens Co. v. United Steelworkers*, 913 F.3d 1166, 1169 (6th Cir. 1990) ("When courts are called on to review an arbitrator's decision, the review is very narrow; [it is] one of the narrowest standards of judicial review in all of American jurisprudence.").

7

The Arbitrator's ten page opinion has all the hallmarks of interpretation and does not indicate that the Arbitrator was doing anything other than trying to reach a good-faith interpretation of the APA. *Mich. Family Res. Inc.*, 475 F.3d at 754. It cannot be said that his decision was so contrary to the APA that it cast doubt on whether he was engaged in interpretation as opposed to the implementation of his "own brand of industrial justice." *Id.* at 753-54.

Accordingly, the Court declines to disrupt the Arbitrator's findings with respect to Lumenate's claims under the APA.

### C. Modification of the Arbitration Order

In the alternative, Lumenate argues that the Court should exercise its discretion to modify the Arbitration Order and reinstate the original payment schedule in the APA. The Court "may modify and correct the award, so as to effect the intent thereof and promote justice between the parties." 9 U.S.C. § 11.[5] Generally, a court may reconsider and modify an award where the miscalculation "is evident from the face of the award" and modification "require[s] no additional factfinding." *Telle v. Estate of Soroka*, No. 08AP-272, 2008 Ohio App. LEXIS 4100, at *9 (Ohio App. Sept. 25, 2008).

Lumenate argues that the Arbitrator materially miscalculated the damages where he: (a) found that DPS and Nesbitt breached the APA; yet (b) failed to address whether DPS—despite breaching the APA—was entitled to accelerate the Note (or alternatively,

---

[5] *See also, In re Arbitration between Sociedad Armaadora Aristomenis Panama, S.A. ex rel. Honduran Streamship Aristotelis v. Tri-Coast S.S. Co.*, 184 F. Supp. 738, 744 (S.D.N.Y. 1960) ("[T]he Court reiterates that the policy in the federal courts is to uphold arbitration awards whenever that can justly be done. Under 9 U.S.C. § 11, the Court possesses discretionary power to promote justice between the parties.").

whether Lumenate was entitled to suspend performance). Thus, to promote justice, Lumenate argues that the Court should reinstate the original payment schedule and terms under the Note.

As explained *supra* at Section III.A, DPS's counterclaim, which arises out of the Note, is within the exclusive jurisdiction of this Court. *See Data Processing Sciences Corp. v. Lumenate Technologies LP, et al.*, No. 1:14cv740. Whether the amounts due under the Note should be accelerated will be determined in that case.[6]

### IV. CONCLUSION

For these reasons, Lumenate's motion to vacate or modify the arbitration award (Doc. 13) is **GRANTED IN PART** and **DENIED IN PART**.

Specifically, the arbitration award is **CONFIRMED** as follows:

> "All of Lumenate's claims against [DPS] are dismissed, including claims for indemnification under Section 8.2 of the APA, the claim for breach of contract under the APA, the claim for conversion of accounts receivable and emails allegedly belonging to Lumenate and the claim for fraudulent misrepresentation and concealment.
>
> Lumenate is not entitled to any set-off under Paragraph 5 of Lumenate's Promissory Note payable to DPS, dated August 1, 2013. Accordingly, the Arbitrator enters this award in favor of Respondent DPS and against [Lumenate] under Section 8.2 and Section 8.3 of the APA.
>
> ∗∗∗
>
> The arbitration clause, Section 8.6 of the APA, authorizes the Arbitrator to award attorney fees to the prevailing party. Because this

---

[6] Currently pending before the Court is DPS's motion for summary judgment. (Case No. 1:14cv740, Doc. 3). In that motion, DPS moves the Court to enter judgment on the Note in favor of DPS and against Lumenate in the amount of $4,082,718.49, plus interest. (*Id.*)

> is a case where there were breaches in the contract by [DPS], yet no proven damage sustained by [Lumenate], the Arbitrator will not exercise the authority provided in the APA to shift attorney fees. Each party shall bear their own costs of their respective attorney fees.
>
> Each party shall bear all their own other related costs such as expert witnesses and exhibits.
>
> However, the costs of the proceeding, including AAA fees and arbitrator fees shall be borne entirely by [Lumenate]. Therefore, the Administrative fees and expenses of the AAA totaling $31,600.00 shall be borne $31,600.00 by Lumenate Technologies, LP. The compensation and expenses of Arbitrator totaling $65,163.67 shall be borne $65,163.67 by Lumenate Technologies, LP. Therefore, Lumenate Technologies, LP shall pay Data Processing Sciences Corp. and Scott Nesbitt, an amount of $47,281.82.
>
> The court reporter fees[7] shall be borne entirely by [Lumenate]."[8] (footnotes added).

(Doc. 1-1 at 10-11).

_____

Accordingly, a monetary judgment for the total sum of $49,762.32 is granted by this Court in favor of Data Processing Sciences Corporation and against Lumenate Technologies, L.P. for arbitration costs and court reporter expenses, plus per diem interest at 3% per annum, the Ohio legal rate, on such amount from and after March 11, 2016, in the amount of $4.09 each day. This judgment may be registered immediately in any district under 28 U.S.C. § 1963.

---

[7] The court reporter fees are $2,480.50. (Doc. 8 at 19, Ex. 1).

[8] The Arbitrator states that the AAA fees and arbitrator fees shall be borne by "Claimants" (i.e., both Luemante, LLC and Lumenate Technologies, LP), but later only identifies Lumenate Technologies, LP. (Doc. 1-1 at 11). DPS expressly requests a judgment for the total sum of $49,762.32 as against Lumenate Technologies, LP only. (Doc. 8-2 at 2).

The Arbitrator lacked jurisdiction over DPS's counterclaim and, therefore, the following portion of the arbitration award is **VACATED**:

> "Respondent DPS is awarded the sum of $4,141,927 against Claimant Lumenate Technologies, L.P. under Section 8.4 of the parties' APA, plus per diem interest at 6% per annum on such principal amount from and after January 31, 2016, in the amount of $680.40 each day until this award is satisfied."

(Doc. 1-1 at 10-11).

**IT IS SO ORDERED**.

Date: 5/16/16

*s/ Timothy S. Black*
Timothy S. Black
United States District Judge